UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

MEE DIRECT, LLC and MEE
APPAREL, LLC,

             **Plaintiffs,**

   - against -

TRAN SOURCE LOGISTICS, INC. and
HOWARD CATES,

             **Defendants.**

------------------------------------------------- X

**OPINION AND ORDER**

**12 Civ. 6916 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/26/12

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION[1]

       MEE Direct, LLC ("MEE Direct") and MEE Apparel, LLC ("MEE

Apparel") (collectively, "MEE") commenced this action in the Supreme Court of

New York County, New York, against Tran Source Logistics, Inc. ("Tran") and

Howard Cates.  MEE alleges four causes of action: (1) breach of contract against

Tran; (2) unjust enrichment against Cates; (3) piercing the corporate veil against

---

[1]    The Court has subject matter jurisdiction over this action under 28
U.S.C. § 1332 because the parties are of diverse citizenship and the amount in
controversy exceeds $75,000.  *See* 12/20/12 Affidavit of Gregg Donnenfeld
("Donnenfeld Aff."), ¶¶ 1-4 (diversity of citizenship); State Court Complaint
("Compl." in footnotes, "Complaint" in body text), Ex. A to Notice of Removal, ¶
23 (amount in controversy).

Cates; and (4) breach of fiduciary duty against Tran and Cates.  Defendants timely removed this action to this Court based on diversity of citizenship.  Presently pending before the Court is Cates's motion to dismiss the Complaint, as against him, for lack of personal jurisdiction.

## II.    BACKGROUND[2]

### A.    Facts

MEE Direct and MEE Apparel are limited liability companies engaged in, respectively, the retail and wholesale sale of Marc Ecko-branded clothing.[3]  MEE Direct is organized under the laws of Delaware, and its sole member is Holton99, LLC, a New Jersey LLC whose members are Seth Gerszberg, a citizen of New Jersey, and Holton1, Inc., a corporation incorporated in and with its center of operations in New Jersey.[4]  MEE Apparel is organized under the laws of New Jersey, and it has the same ownership as MEE Direct.[5]  Tran is a Maryland

---

[2]     The following facts are drawn from the State Court Complaint; the Notice of Removal; and the parties' submissions regarding the pending motion.

[3]     *See* Compl. ¶ 1.

[4]     *See* Donnenfeld Aff. ¶ 2.

[5]     *See id*. ¶ 3.

2

corporation that provides transportation services to its clients.[6]  Cates, a natural person residing in Pennsylvania, is the president of Tran.[7]

By a contract dated June 29, 2009 (the "Agreement"), MEE retained Tran to provide certain transportation services in return for monthly payments.[8] These services included collecting, reviewing, and auditing the invoices received from MEE's mail carriers, Federal Express, Argix, and UPS.[9]  After reviewing and auditing these invoices, Tran was to send them to MEE for payment, MEE was to make these payments to Tran, and Tran was to use them to pay the carriers.[10]

The Complaint alleges that in 2011, MEE learned that approximately three hundred and sixty eight thousand dollars which it had transferred to Tran for the purposes of paying its mail carriers had never been paid to the mail carriers.[11]

---

[6]     *See* Compl. ¶ 2.

[7]     *See id*. ¶ 3.

[8]     *See id*. ¶ 4.  Neither party explicitly states where the Agreement was signed, but Cates alleges that "[t]o the best of my recollection, all of the pre-signing meetings which I attended pertaining to the Agreement occurred in New Jersey . . . ."  *See* 9/10/12 Affidavit of Howard Cates, president of Tran, in further support of Cates's motion to dismiss ("Cates Aff.") ¶ 5.

[9]     *See id*.

[10]    *See id*.

[11]    *See id*. ¶ 7.

The Complaint further alleges that Tran retained and converted this sum for its own benefit, and that Cates was personally involved in this conversion.[12]

**B.    Additional Facts Related to this Motion**

MEE has made the following further allegations relating to Cates's contacts with New York.  *First*, Mee alleges that Cates attended a meeting in New York for the purposes of implementing the Agreement.[13]  *Second*, MEE alleges that Cates exchanged a number of phone calls with its representatives about the allegedly converted funds, and that these phone conversations resulted in two meetings between MEE and Cates in Manhattan.[14]  *Third*, MEE points out that Cates admits to attending two settlement meetings related to the Agreement in New York.[15]  Finally, MEE alleges that Tran is the alter-ego of Cates, and as such, MEE argues, Cates's contacts with New York are attributable to him, regardless of whether he was appearing in his capacity as a representative of Tran.[16]

---

[12]      *See id*.

[13]      *See* 10/24/12 Declaration of Gregg Donnenfeld, executive vice president and general Counsel of MEE, in opposition to motion to dismiss ("Donnenfeld Decl.") ¶ 6.

[14]      *See id*. ¶ 7.

[15]      *See id*. ¶ 8 (citing Cates Aff. ¶ 5).

[16]      *See id*. ¶¶ 9-10.

4

Cates makes the following allegations in further support of this motion. *First*, Cates alleges that he is not personally a party to the Agreement.[17] *Second*, Cates alleges that "[w]hile my responsibilities as President of Tran [] included assisting in the administration of the Agreement, that was entirely in my capacity as an officer of Trans Source, and not in my individual capacity."[18] Finally, Cates alleges that he has never: (1) resided in nor owned or leased property in New York; (2) maintained an office, mailing address, or telephone listing in New York; and (3) had bank accounts, employees or agents in New York.[19]

## III.   LEGAL STANDARD

### A.   Rule 12(b)(2) Motion to Dismiss

When the issue of personal jurisdiction "is decided initially on the pleadings and without discovery, the plaintiff need only show a prima facie case."[20] Plaintiffs "can make this showing through [their] own affidavits and supporting

---

[17]   *See* Cates Aff. ¶ 7.

[18]   *Id*. ¶ 9.

[19]   *See id*. ¶¶ 9-13.

[20]   *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). *Accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 724 (S.D.N.Y. 2010) ("As no discovery has yet taken place, to survive a motion to dismiss the plaintiff must plead factual allegations [that] constitute a prima facie showing of jurisdiction.") (quotation marks omitted).

5

materials containing an averment of the facts that, if credited . . . would suffice to establish jurisdiction over the defendant."[21] Thus, a court may consider materials outside the pleadings,[22] but must credit plaintiffs' averments of jurisdictional facts as true.[23] "[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."[24] Nonetheless, where a defendant "rebuts [plaintiffs'] unsupported allegations with direct highly specific, testimonial evidence regarding a fact essential to jurisdiction – and plaintiffs do not counter that evidence – the allegation may be deemed refuted."[25]

### 1. General Jurisdiction Under Section 301 of the CPLR

New York's long-arm statute, Sections 301 and 302 of the New York Civil Practice Law and Rules ("CPLR"), governs personal jurisdiction over non-

---

[21] *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quotation marks and citations omitted).

[22] *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000).

[23] *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*, 84 F.3d 560, 567 (2d Cir. 1996).

[24] *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). *Accord Whitaker*, 261 F.3d at 208.

[25] *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002).

domiciliary defendants.  Section 301, the general jurisdiction statute, states that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  "Section 301 grants jurisdiction over a foreign party engaged in such a continuous and systematic course of doing business [in New York] as to warrant a finding of its presence in this jurisdiction."[26]

### 2.    Specific Jurisdiction Under Section 302 of the CPLR

Section 302(a) of the CPLR states, in pertinent part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> . . .
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .

---

[26]    *Universal Trading & Inv. Co., Inc. v. Tymoshenko*, No. 11 Civ. 7877, 2012 WL 6186471, at *2 (S.D.N.Y. Dec. 12, 2012).

Under 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary if two conditions are met: (1) the non-domiciliary transacts business within New York; and (2) there is, "at a minimum, a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former . . . ."[27] Section 302(a)(1) "is a single-act statute requiring but one transaction – albeit a purposeful transaction – to confer jurisdiction in New York."[28]

"New York courts define 'transact[ing] business' as purposeful activity – 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"[29] "In determining whether an out-of-state defendant has transacted business in New York within the meaning of CPLR § 302(a)(1), the Second Circuit has considered, inter alia, 'whether the defendant has an on-going contractual relationship with a New York corporation, . . . [and] whether the

---

[27]     *Licci v. Lebanese Canadian Bank*, – N.E.2d –, 2012 N.Y. Slip Op. 07854 (Nov. 20, 2012) (answering certified question from the Second Circuit).

[28]     *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005). *Accord Deutsche Bank Sec., Inc. v. Montana Bd. Invs.*, 7 N.Y.3d 65, 71 (2006) ("[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.") (quotation marks omitted).

[29]     *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)).

contract was negotiated or executed in New York, and whether after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship . . . .'"[30]

"[F]or meetings in New York which are subsequent to the formation of the contractual relationship to confer jurisdiction, the meetings must be essential to the business relationship or at least substantially advance it."[31]  As such, meetings discussing progress reports and the like generally do not support the exercise of personal jurisdiction.

"In order for out-of-state communication about a contract alone to confer personal jurisdiction, the 'center of gravity' of that contract must be New York.  In other words, where a defendant's 'contacts with New York consist of telephone calls, fax transmissions, and correspondence in connection with the negotiation of a contract that has a center of gravity well outside the state,' there is

---

[30]   *V Cars, LLC v. Israel Corp.*, — F. Supp. —, No. 09 Civ. 8969, 2012 WL 4714816, at *11 (S.D.N.Y. Sept. 30, 2012) (quoting *Aquiline Capital Partners LLC v. Finarch LLC*, No. 11 Civ. 3684, 2012 WL 1764218, at *6 (S.D.N.Y. May 17, 2012)) (further citations omitted).

[31]   *Upstate Networks, Inc. v. Early*, No. 11 Civ. 1154, 2012 WL 3643843, at *6 (N.D.N.Y. Aug. 23, 2012) (quoting *Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd.*, 956 F. Supp. 1131, 1136 (S.D.N.Y. 1997)) (further citations omitted).

no personal jurisdiction under C.P.L.R. § 302(a)(1)."[32]  "Under the 'center of gravity' approach, a court may consider a number of significant contacts, including the place of contracting, the place of performance, the physical location of property of the subject matter of the contract, and the domiciles or places of business of the contracting parties. The place of contracting and the place of performance are given the greatest weight."[33]

Under Section 302(a)(3), a court may exercise personal jurisdiction over a non-domiciliary who committed a tort outside of New York that caused injury within New York.  "The conferral of jurisdiction under [Section 302(a)(3)(ii)] . . . rests on five elements: *First*, that defendant committed a tortious act outside the State; *second*, that the cause of action arises from that act; *third*, that the act caused injury to a person or property within the State; *fourth*, that defendant expected or should reasonably have expected the act to have consequences in the State; and *fifth*, that defendant derived substantial revenue from interstate or

---

[32]  *ING Global v. United Parcel Service Oasis Comp Supply Corp.*, No. 11 Civ. 5697, 2012 WL 28259, at *3 (S.D.N.Y. Jan. 4, 2012) (quotation marks and citation omitted).

[33]  *Forest Park Pictures v. Universal TV Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012) (citations omitted).

international commerce."[34]  The test is the same for jurisdiction under Section

302(a)(3)(i), except that instead of the last two elements, the defendant must: (1)

engage in conduct in New York that is regular, persistent, or substantial; or (2)

derive substantial revenue from goods sold and consumed in New York or services

performed in New York.[35]

In determining where an injury took place for the purposes of Section

302(a)(3), New York courts apply the "situs of the injury" test.[36]  "The situs of the

injury is the location of the original event which caused the injury, not the location

where the resultant damages are subsequently felt by the plaintiff[,] . . . [and] the

situs of a nonphysical, commercial injury is where the critical events associated

with the dispute took place."[37]

### 3.    The Fiduciary Shield Doctrine

---

[34]    *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000) (emphasis added).

[35]    *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 200 (2d Cir. 1990) ("The few cases on point indicate that in order to sustain jurisdiction under section 302(a)(3)(i), plaintiffs must demonstrate more than substantial revenue from sales to a New York entity, they must make some showing that the associated goods are 'used or consumed' in New York.").

[36]    *See  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999).

[37]    *V Cars, LLC*, 2012 WL 4714816, at *16.

The fiduciary shield doctrine provides that an individual should not be subject to personal jurisdiction if his contacts with a forum State were solely in a corporate capacity.[38]  New York's Court of Appeals has rejected this doctrine.[39]

### 4.    Due Process

As set forth by the Supreme Court in *International Shoe v. Washington*, due process requires that a defendant "not present within the territory of the forum" have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[40] This involves an analysis consisting of two components: the minimum-contacts test and the reasonableness inquiry.

To establish the minimum contacts necessary to satisfy due process, the plaintiff must show that "his claim arises out of or relates to, the defendant's contacts with the forum . . . [that] the defendant purposefully availed itself of the privilege of doing business in the forum state and that the defendant could foresee

---

[38]    *See In re Teknek, LLC*, 512 F.3d 342, 345 (7th Cir. 2007) (citing *ISI Int'l Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548 (7th Cir. 2001)).

[39]    *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 472 (1988) ("[W]e hold the fiduciary shield rule is not available to defeat jurisdiction under the New York long-arm statute").  *Accord TAGC Mgmt, LLC v. Lehman*, 842 F. Supp. 2d 575, 582 (S.D.N.Y. 2012) (citing *Kreutter*); *Retail Software Svcs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988) (recognizing *Kreutter*'s holding).

[40]    326 U.S. 310, 316 (1945).

12

being haled into court there."[41]  If the defendant's contacts with the forum state rise

to this minimum level, the defendant may defeat jurisdiction only by presenting "a

compelling case that the presence of some other considerations would render

jurisdiction unreasonable."[42]  Courts must weigh several factors in evaluating this

"reasonableness" requirement of due process, including: (1) "the burden on the

defendant"; (2) "the interests of the forum State"; (3) "the plaintiff's interest in

obtaining relief"; (4) "the interstate judicial system's interest in obtaining the most

efficient resolution of controversies"; and (5) "the shared interest of the several

States in furthering fundamental substantive social policies."[43]

## IV.   DISCUSSION

### A.   This Court Lacks Personal Jurisdiction Over Cates

In support of his motion to dismiss for lack of personal jurisdiction,

Cates makes two arguments.  *First*, Cates argues that this Court may not  exercise

personal jurisdiction over him under the due process clause.[44]  *Second*, Cates

------------------------------------------------

[41]     *Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez*, 305 F.3d
120, 127 (2d Cir. 2007) (internal quotation marks omitted).

[42]     *Burger King Corp. v. Rudzewicz*, 471  U.S. 462, 477 (1985).

[43]     *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14
(1987) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980)).

[44]     *See* Memorandum of Law in Support of Motion of Defendant Howard
Cates Under F.R.Civ.P. 12(b)(2) to Dismiss Complaint for Lack of Personal

argues that the fiduciary shield doctrine should prevent Cates's activities in New York on behalf of Tran from being imputed to Cates for the purposes of New York's long-arm statute.[45]   In reply, MEE argues that Cates's contacts with New York are sufficient to exercise personal jurisdiction over him under Section 302(a)(1) or Section 302(a)(3).[46]

Although Cates's reliance on the fiduciary shield doctrine is misplaced, Cates is not subject to personal jurisdiction in New York.  Two facts are relevant to this determination.  *First*, none of the parties in this action are citizens of New York.  *Second*, the Agreement's center of gravity is not in New York.  The Agreement was between out-of-state parties; lacks a New York forum selection or choice of law clause; and does not contemplate performance in New York.[47]

---

Jurisdiction at 7 ("Clearly, the exercise of personal jurisdiction over Defendant Cates does not comport with traditional notions of fair play and substantial justice and is unreasonable under the circumstances of this particular case.").

[45]      *See id.* at 6 ("To the extent that the Complaint might be read to imply any activity in New York, it is activity of Defendant Tran Source, not activity of Defendant Cates.").

[46]      MEE also argues that Cates is subject to general jurisdiction under Section 301.  *See* Memorandum of Law in Opposition to Defendant Howard Cates' Motion to Dismiss the Amended Complaint ("Opp. Mem.") at 6-8.  However, MEE nowhere alleges the systemic contacts necessary for the imposition of general jurisdiction on a non-domiciliary under that Section.

[47]      *See* Agreement, Ex. B to Donnenfeld Decl., at 1-2.  Although it is easy to see that the Agreement's center of gravity was not in New York, it is more

14

MEE alleges that Cates attended a freight review meeting, as well as two negotiations related to the allegedly converted funds, in its Manhattan offices.[48]  MEE further alleges that Cates telephoned its Manhattan offices on numerous occasions to set these meetings up.[49]  MEE does not allege that the meetings, which were conducted subsequent to the formation of the Agreement, were necessary to or substantially advanced its business relationship with Tran. Therefore, the meetings do not support the exercise of personal jurisdiction.[50] Further, given that the center of gravity of the contract was not in New York, the contacts Cates may have had with New York from out of state do not constitute the

_____

difficult to determine where the center of gravity was.  The negotiations that blossomed into the Agreement took place in New Jersey, where MEE is located, but the performance presumably took place in Maryland, where Tran is located. For the purposes of this motion, though, it is sufficient to find that the contract's center of gravity was not in New York.

[48]     *See* Donnenfeld Decl. ¶¶ 6-8.

[49]     *See id*. ¶ 7.

[50]     *See Three Five Compounds, Inc. v. Scram Tech., Inc.*, No. 11 Civ. 1616, 2011 WL 5838697, at *11 (S.D.N.Y. Nov. 21, 2011) (stating that "[c]ourts in this Circuit have repeatedly and virtually universally declined to find that such meetings amount to the transaction of business[,]" and collecting cases where post-contractual meetings were deemed insufficient to support jurisdiction under Section 302(a)(1)).

15

"purposeful availment" necessary for the imposition of jurisdiction under Section 302(a)(1).[51]

      Similarly, the imposition of jurisdiction on Cates under Section 302(a)(3) is improper, because New York is not the situs of injury.  MEE alleges that "[] Cates committed a tortious act. He converted MEE's money for his and [Tran]'s sole use and benefit. Cates' actions caused injury to MEE in New York."[52] However, the original event which caused the injury, *i.e.* the situs of injury, was the conversion.  No facts have been alleged that this injury occurred in New York, and it is likely that it was not in New York, given that Tran is situated in Maryland and that Cates is a citizen of Pennsylvania.

      For these reasons, this Court lacks personal jurisdiction over Cates.  In light of this conclusion, I do not consider Cates's due process argument.

## B.    Transfer to the District of Maryland

---

[51]    *See Pincione v. D'Alfonso*, No. 11 Civ. 4231, 2012 WL 6621370, at *2 (2d Cir. Dec. 20, 2012) (holding that numerous telephone calls to New York, as well as a meeting in New York, did not constitute purposeful availment of New York's laws, because they were all in furtherance of a business deal in Italy).

[52]    Opp. Mem. at 9.

Instead of dismissing an action for lack of personal jurisdiction, a court may transfer it to an appropriate federal court.[53]  Whether to dismiss or transfer an action "lies within the sound discretion of the district court."[54]  Neither party has moved to transfer, but MEE has argued that it would serve the interests of justice and efficiency to litigate its claims against Tran and Cates in a single forum.[55]  I agree.  Because this Court lacks jurisdiction over Cates, 28 U.S.C. § 1406 is the proper vehicle for the transfer.

Accordingly, the Clerk of the Court is directed to transfer this case forthwith to the District of Maryland, which has already held that it has jurisdiction over Tran and Cates with respect to a nearly identical action involving a different client of Tran's.[56]

---

[53]    *See SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) ("[L]ack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from either section 1406(a) or section 1404(a).").

[54]    *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

[55]    *See* Donnenfeld Decl. ¶ 10 (" . . . Tran Source has answered and does not contest this Court's jurisdiction, so that Cates is asking, in essence, for this Court to require MEE to litigate the same dispute before two separate judicial forums.").

[56]    *See L'Occitane, Inc. v. Tran Source Logistics, Inc.*, No. 09 Civ. 2499, 2009 WL 4738073, at *2 (D.Md. Dec. 3, 2009).

## V.   CONCLUSION

For the reasons set forth above, the case will be transferred to the District of Maryland.  The Clerk of the Court is directed to transfer this case to the District of Maryland forthwith, and to close the case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 26, 2012

18

**- Appearances -**

**For Plaintiffs:**

Ted Portez, Esq.
ELENOFF GROSSMAN & SCHOLE, LLP
150 E. 42nd St.
New York, New York 10017
(212) 370-1300

**For Defendants:**

John M. Cinti, Esq.
REGER, RIZZO & DARNALL, LLP
700 East Gate Drive
Suite 101
Mt. Laurel, New Jersey 08054
(856) 778-8950